IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| MARK NIELSEN, RHONDA NIELSEN, individually and as next friend and natural mother of her minor son ROBERT McPHAIL, | ) ) ) ) ) | CV 05-47-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| TIG INSURANCE COMPANY | ) ) | |
| Defendant. | ) ) ) | |

Judge Leif B. Erickson entered his Findings and
Recommendation in this case on May 4, 2006.  Defendant TIG
Insurance Company filed its objections on May 18, 2006.  TIG is
therefore entitled to de novo review of the Findings and
Recommendation.  28 U.S.C. § 636(b)(1) (2000).

Judge Erickson recommended 1) granting Plaintiffs' motion
for partial summary judgment concerning TIG's breach of duty to
defend; 2) denying TIG's motion for summary judgment; and 3)

-1-

granting Plaintiffs' motion for summary judgment concerning the consequences of the breach of the duty to defend.  I agree.

I.    **General Background**

In July 2002, Plaintiffs suffered injuries in an automobile accident where the driver, David Hanna, was acting in the scope of his employment for Confluence Expeditions, L.C..  Plaintiffs filed the underlying lawsuit against Confluence and Hanna to recover for their damages.  *See Nielsen, et al. v. Hanna, et al.*, CV 02-196-M-DWM (filed December 4, 2002).

When Confluence sought insurance coverage from TIG, TIG refused to defend or indemnify Confluence.  TIG and Confluence had agreed upon a commercial general liability policy covering Confluence in May 2001.  This policy was in place at the time of the accident.

Confluence eventually settled the underlying lawsuit and assigned all of its rights and claims under the insurance policy with TIG to Plaintiffs.  Plaintiffs initiated this lawsuit and set forth two claims: 1) TIG breached the insurance policy by refusing to defend Confluence and that Confluence suffered damage as a result of the breach and Plaintiffs are now entitled to the remedies that would otherwise be available to Confluence; and 2) Plaintiffs seek a declaratory judgment establishing that TIG had a duty to defend Confluence, which TIG breached.

The Parties have each filed motions for summary judgment

-2-

addressing the question of TIG's duty to defend and the alleged
breach.   Plaintiffs also filed a motion for summary judgment
addressing the consequences of TIG's action and asserting TIG is
responsible for the full amount of the underlying judgment, plus
interest, and attorneys' fees.

## II.  Analysis

### A.   Summary Judgment Standards

A party moving for summary judgment is entitled to such if
the party can demonstrate "that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party is
entitled to summary judgment where the documentary evidence
produced by the parties permits only one conclusion.  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  On a motion for
summary judgment, this Court must determine whether a fair-minded
jury could return a verdict for the nonmoving party.  *Id*. at 252.

The party seeking summary judgment bears the initial burden
of informing the Court of the basis for its motion, and
identifying those portions of the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the
affidavits, if any, which it believes demonstrate the absence of
any genuine issue of material fact.  *Celotex Corp. v. Catrett*,
477 U.S. 317, 323 (1986).

Where the moving party has met his initial burden with a

properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248.  The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  *Id*.

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court.

As to materiality, the applicable substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.  Factual disputes which are irrelevant or unnecessary to the outcome are not considered.  *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine.  In other words, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not be granted.  *Id*.  In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail

-4-

as a matter of law.  *Id*. at 251-252.  Though the *Anderson* Court
stated that at the summary judgment stage the judge's function is
not to weigh the evidence and determine the truth of the matter,
but to determine whether there is a genuine issue for trial, it
also stated that if the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted.  *Id.*
at 249-50.

     B.   The Duty to Defend

          1.   Case Law Standards

TIG had a duty to defend Confluence because the Amended
Complaint set forth facts that conceivably brought the accident
within the coverage policy provided by TIG.   The Montana Supreme
Court has held insurers have a duty to defend when the complaint
alleges facts that represent affairs covered by the terms of the
insurance policy.  *Farmers Union Mutual Insurance Co. v. Staples*,
2004 MT 108, ¶ 20, 321 Mont. 99, ¶ 20, 90 P.3d 381, ¶ 20.  If the
facts of the event as pled in the complaint would expose the
insured to liability covered by the policy, then the insurer must
defend the insured, even if the subsequent ultimate resolution of
disputed facts establishes that the event or risk is not covered
by the policy.  *Staples*, ¶ 23.  Justice Leaphart, speaking for
the Court, stressed that it was the role of the jury and the
court to be fact finders, not insurance companies.  *Id.*

The duty to defend can arise when the insurer receives

notice of a covered risk through pleadings, discovery, or through notice of final issues declared ready for trial. *Grindheim v. Safeco Insurance Co.*, 908 F. Supp. 794, 798 (D. Mont. 1995) (recognizing that notice of a claim is sufficient if received through the institution of an action against the insured). The *Staples* Court reinforced this precept when it concluded a duty to defend arises at the time the insurer reviews the complaint and answer. *Staples*, ¶ 23.

The duty to defend is a broader responsibility than the duty to indemnify and they are distinct obligations. *Grindheim*, 908 F. Supp. at 800 (citing *St. Paul Fire & Marine Ins. Co. v. Thompson*, 150 Mont. 182, 188, 433 P.2d 795, 799 (1967)). In line with this responsibility, insurance policies are construed from the viewpoint of the insured–factual assertions are taken from the insured's perspective. *Grindheim*, 908 F. Supp. at 801. And the basis of the viewpoint is that of a consumer of average intelligence. *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 379, 945 P.2d 32, 34 (1997) (citation omitted).

To determine when an insurer's obligation is "triggered, the court must liberally construe the allegations in the complaint, resolving all doubts about the meaning of the allegations in favor of finding the obligation to defend was 'triggered.'" *Grindheim*, 908 F. Supp. at 805. Indeed, unless there is an "unequivocal demonstration" that the contested claim does not

-6-

fall within the policy, the insurer has a duty to defend. *Staples*, ¶ 22.  When there is a question regarding coverage, "that question is reserved for the court or the jury."  *Id.*

Keeping in mind the "fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense," exclusion policies are narrowly construed.  *Id.* Additionally, the insurer bears the burden of establishing the application of an exclusion.  *Travelers Casualty and Surety Co. v. RIBI Immunochem Reseach, Inc.*, 2005 MT 50, ¶ 29, 326 Mont. 174 ¶ 29, 108 P.3d 469, ¶ 29.

In *Staples*, the Montana Supreme Court found a duty to defend when there was a question regarding coverage after an auto accident with a horse.  A dispute over the ownership of the horse gave rise to the controversy of the duty to defend.  Justice Leaphart reiterated the policy of finding coverage when it is in question: he admonished the insurance company, stating it should have defended its client under a reservation of rights and filed a declaratory judgment action.  *Id.*, ¶¶ 6-13, 26.  The decision also noted that where an insurer wrongly fails to provide defense it is liable for defense costs and judgments.  *Id.*, ¶ 20.

> 2.   Pertinent Facts

At the time of the accident, TIG covered Confluence through a commercial general liability policy.  Within the policy a provision specifically provided TIG, "will pay those sums that

-7-

the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The policy further enumerated that TIG had the "right and duty to defend the insured against any 'suit' seeking those damages."  The provision also stated that TIG was not bound to defend in instances where the policy did not apply.

TIG has relied extensively on an exclusionary provision within the policy: "'Bodily injury' or 'property damage' arising out of ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured."

The facts show Hanna was acting within the course and scope of his employment with Confluence when he lost control of the vehicle he was driving and it rolled, causing the underlying bodily injuries to Plaintiffs.  As a result, Plaintiffs filed suit on December 4, 2002 against Hanna and Confluence. Originally, the Complaint only alleged negligence on Hanna's part.

Upon notice of the suit, TIG twice informed Confluence via written letters that it did not believe a duty to defend existed. TIG cited the aforementioned exclusionary clause and stated that because the automobile was owned and operated by Hanna, the insured, there was no duty to defend.

Another insurance provider, Gulf Insurance Company also

insured Confluence under an auto policy.  Gulf did defend
Confluence in the action but challenged coverage as well.  As a
result of this challenge a new strategy emerged, prompting
Plaintiffs to amend the Complaint.

Confluence's attorney Gary Zadick picked up on a point in
Gulf's briefs: if the Complaint alleged negligence on the part of
Confluence rather than Hanna, TIG would be obliged to defend.
Some manner of "discussion" ensued and Plaintiffs then filed
their First Amended Complaint.  The Amended Complaint alleged two
new causes of action: Count Two) Confluence breached its duty to
warn Plaintiffs about Hanna's poor driving record and Count
Three) Confluence breached its duty to prohibit Hanna from
transporting Plaintiffs for Confluence.

Confluence then provided TIG with the Amended Complaint and
requested TIG provide a defense and indemnity.  Confluence wrote
three letters to TIG tendering defense to the insurance company
and seeking indemnification.  In the final letter on June 23,
2004, Confluence wrote that it had to assume that TIG was not
going to provide a defense and accordingly, Confluence advised
TIG that it would have to "protect" itself, which might include
an entry of judgment in exchange for a covenant of protection as
well as the possibility of assignment of its claims against TIG.

TIG responded on July 6, 2004, reiterating its previous
position.  TIG concluded the letter by saying, "[i]f you continue

-9-

to claim there is coverage under the general liability policy, please provide me with your reasoning."

In December 2004, the Parties in the underlying action—not including TIG—entered into a settlement agreement.  As part of the agreement, a hearing was set to determine damages and Confluence agreed not to contest the amount "unless the proof offered or damages requested is collusive, fraudulent, or improper."

On March 25, 2005, the Parties appeared before this Court for the hearing on damages.  After the conclusion of two hours of testimony and the presentation of evidence, the Court concluded Plaintiffs were entitled to in excess of $8 million in damages.

        3.    TIG's Duty to Defend.

Judge Erickson correctly held TIG had a duty to defend under Count Two of the Amended Complaint, where the claim alleged Confluence had a duty to warn Plaintiffs of Hanna's poor driving record.  The previously cited case law speaks clearly and spells out why insurance companies should hesitate to refuse to tender defense unless it is absolutely clear that defense is not warranted.  Judge Erickson's review of *Pablo v. Moore*, 2000 MT 48, 298 Mont. 393, 995 P.2d 460, is also informative as this decision buttresses this point.

Notably, the facts in *Pablo* parallel the circumstances here. The plaintiffs were injured in an automobile accident where the

-10-

defendant's employee was at fault.  Plaintiffs sued the employer,
alleging it failed to warn of a known hazard and negligently
trained and supervised the employee who caused the accident.
*Id.*, ¶¶ 5, 7.  The applicable policy covered liability for duty
to warn, but the insurer argued that an automobile exclusion,
identical to the one here, applied.  *Id.*, ¶¶ 6-7.  However, the
court found the term "arising out of" was ambiguous and construed
the duty to warn and the negligent supervision theories against
the employer for its conduct.  *Id.*, ¶¶ 24-25.  Accordingly, the
court ruled the insurer had a duty to defend.  *Pablo's* message
complements the decisions in *Staples* and *Grindheim*: insurance
companies must adhere to the law, comply with the coverage duties
of their policies, and if in doubt, follow Justice Leaphart's
suggestion and continue under a reservation of rights.

     Indeed, the results from *Pablo* should have forewarned TIG.
Essentially, the *Pablo* decision rendered the automobile exclusion
provision relied upon by TIG ambiguous as a matter of law and at
the very least, the decision's finding concerning the failure to
warn should have prompted TIG to consider that the Amended
Complaint set forth facts that "potentially" could result in
coverage.

     While TIG cites several reasons why a duty to defend did not
exist, they are not persuasive.  First, TIG cites *Brabeck v.
Employers Mutual Casualty Co.*, 2000 MT 373, 303 Mont, 468, 16

P.3d 355, to show a duty to defend did not exist.  While the
*Brabeck* Court ruled the insurer did not have a duty to defend,
the case is factually inapposite because the claims in the
underlying complaint alleged the employer "was vicariously liable
for the negligent driving of its agent on the theory of
respondeat superior."  *Id.*, ¶ 11.  The decision concluded that an
exclusion, identical to the one found here, applied because the
employer "acted negligently through its agent."  *Id.*, ¶ 13.  In
the present case, the Amended Complaint sets forth negligence on
behalf of the employer for its failure to warn.  Therefore,
*Brabeck* is distinguishable.

In its objections, TIG further contends that because the
Supreme Court studied the acts that gave rise to the claim, not
just the language of the complaint, *Brabeck* should lead the Court
to find a duty did not exist.  Here, however, following TIG's
line of reasoning *arguendo*, the basis for the duty to defend are
the acts and the duty on the part of the employer, and its
failure to warn.  This finding does not concern an agent or
respondeat superior.  The asserted legal theory addresses the
employer's culpability and meets the threshold for a duty to
defend.

As well, TIG objects because it argues the Judge
misinterpreted *Brabeck* where the Judge did not apply that case's
negligent entrustment holding to this action and because the

exclusionary clause in Confluence's TIG policy specifically included the word "entrustment."  The exclusionary clause in *Pablo*, which was deemed ambiguous, also contained the word "exclusion" and while TIG did distinguish the facts surrounding the failure to warn in *Pablo*, applying the same logic TIG cannot assume *Brabeck* applies where it is factually distinguishable as well.  The case law concerning the duty to defend is clear: it is broadly assigned, exclusionary clauses are narrowly construed, the insured's viewpoint dictates concerning insurance policies, and courts liberally construe allegation in complaints.  Judge Erickson correctly addressed and applied applicable case law.

TIG also asserts that Confluence's failure to abide by a cooperation clause within the policy relieved it of its duty to defend.  As Judge Erickson found, this argument is disingenuous.  The recited facts and a review of the letters of correspondence show Confluence repeatedly communicated with TIG in an effort to invoke the coverage provided by its insurance policy.  Confluence provided the Amended Complaint to TIG and then followed up with letters seeking TIG's services.  TIG responded stating coverage was not warranted and then advised Confluence to explain why coverage was appropriate.

Again, public policy and case law clearly favor insurance companies providing coverage.  It is not the insured's obligation to conduct legal research in order to invoke coverage–and the

facts in this case show Confluence repeatedly spelled out why coverage was warranted.  Confluence's efforts easily surpass the threshold set forth in *Staples*, where all that is required is notice of the pleadings.  TIG simply ignored its duty.

TIG additionally contests counsels' "collusive" efforts in the underlying action, which yielded the Amended Complaint.  TIG should have set forth its legal arguments regarding the formation of the Amended Complaint in a timely manner.  It could have proceeded with a defense under a reservation of rights.  Now is not the time to question the legal tactics that gave rise to a pleading in the underlying action.[1]

Finally, TIG argues that Gulf's defense of Confluence relieved it of its duty to defend.  TIG's argument is contrary to case law regarding multiple insurers and does not set forth a legal basis that countermands the previously cited legal points concerning the obligations of an insurer to tender defense.  Notably, Judge Erickson pointed the parties to *Security National*

---

[1] In its objections, TIG devotes considerable attention to what Judge Erickson did not address in the Findings and Recommendation.  In particular, TIG finds fault with the manner in which counsel conducted themselves in the underlying matter and construes Judge Erickson's failure to substantially address these actions as an endorsement of TIG's positions.  First, Judge Erickson did thoroughly review these topics and repeatedly found that it was TIG's failure to participate in legal proceedings where its client's interests were at stake that caused the problem.  Additionally, while courts may make narrow findings in an effort to limit the scope of their holdings, affected parties are not free to interpret the lack of courts' attention to other topics as implicit judgment.

-14-

*Ins. v. Wink*, 33 M.F.R. 389 (D. Mont. 2005), where this Court found that an excess insurer has a duty to defend when the primary insurer is already defending.  *Id*.  33 M.F.R. at 395-96. It is also significant that here, Gulf provided defense of the Complaint and was not obligated to defend Confluence under the Amended Complaint.  Upon review of all of the circumstances, Gulf's role in this matter was independent of TIG's duty to defend.

Consequently, as the assignees of Confluence's rights against TIG, Plaintiffs are entitled to summary judgment because case law and the applicable facts show that TIG breached its duty to defend Confluence for the claims set forth in the Amended Complaint.

C.   The Determination of Damages

Since TIG failed to tender a defense in the underlying lawsuit and thereby breached its duty to defend Confluence, the question of damages remains.  In Plaintiffs' motion for summary judgment they asserted they are entitled to damages equal to the amount determined in the underlying action; interest on that amount; and attorneys' fees incurred in this action.

1.   Case Law Standards

Insurance companies who fail to render defense as required by the terms of their policies and the applicable law, do so at considerable risk as the financial penalties are considerable.

-15-

Indeed, the *Staples* decision stated that an insurance company's failure to defend leaves it liable for judgments and costs. *Staples*, ¶¶ 20, 27.  Breach of an insurance contract subjects the insurer to "such damages as were the natural and ordinary consequences of the breach."  *Independent Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 157, 216 P. 1109, 1110 (1923).  In 1995, Judge Hatfield reaffirmed this tenet when he cited *Independent's* finding 72 years later.  *Grindheim*, 908 F. Supp. at 808.  And absent fraud, when an insured enters a stipulation to judgment or offers a confession of judgment it is enforceable against the insurer.  *Staples*, ¶¶ 31-31.  Finally as found by this Court, insurers who breach their duty are liable for the full amount of damages, including those in excess of the insurance policy limits.  *Hudson v. Edsall v. Odyssey*, 30 M.F.R. 462, 466 (D. Mont. 2002).

Montana's statutory law also sets forth the duty of an indemnitor to defend the indemnified party per the terms of a contract.  Failure to do so leaves the indemnitor liable for the judgment rendered.  Mont. Code Ann. § 28-11-316 (2005).

2.   The Underlying Judgment

As established, TIG breached its duty to defend Confluence and based upon the foregoing case law addressing damages, TIG is therefore responsible for the underlying judgment of $8 million. In defense, TIG asserts 1) the judgment is improper due to

-16-

collusion among the attorneys; 2) Gulf's defense of Confluence obviated any damages; and 3) damages are not applicable as Plaintiffs failed to submit a settlement demand within the policy limits.  These arguments are unpersuasive.

The Court has already addressed the topic of collusion.  The proper time to attack the alleged improper relationships among the parties was during the underlying lawsuit.  Moreover, as Judge Erickson found, Montana case law does not impose a duty upon courts to review the nature of the underlying judgment where the breaching insurance company failed to defend its client.  In *Lee v. USAA Cas. Ins. Co.*, the Montana Supreme Court awarded the amount of the confessed judgment, plus interest, plus costs to the plaintiff where the insurance company was in breach of its duty to defend.  2004 MT 54, ¶¶ 17-22, 320 Mont. 174, ¶¶ 17-22, 86 P.3d 562, ¶¶ 17-22.  The *Lee* Court did not conduct a review of the propriety of the underlying judgment that it imposed upon the defendant.  In response, TIG extensively refers to unpersuasive case law from other jurisdictions.  The bottom line is when TIG neglected to assume its duty it assumed a risk.  It is too late to cry foul now.

Nor does Gulf's defense of Confluence obviate the amount of judgment imposed upon TIG.  TIG's liability stems from claims alleged in the Amended Complaint: specifically, the duty to warn. Gulf's coverage does not cover Confluence for that claim.  Gulf

-17-

entered a settlement agreement before this Court's finding for judgment in the underlying lawsuit.  Thus, the resulting damages here are a consequence of TIG's failure to provide a defense to a claim not covered by Gulf's policy.

Additionally, there is no requirement for a settlement demand within TIG's policy limits.  TIG would have the Court ignore the previously cited case law because no one proffered a settlement demand to an insurance company that abandoned its duty to defend its client.  The Court need look no further than *Lee* to see that the Montana Supreme Court did not conduct a check to see if a settlement offer was made.

The duty to defend is broadly applied for compelling public policy reasons.  Insurance companies with legitimate questions can tender a defense with a reservation of rights.  When insurance companies fail to comply with the law and the terms of their policies, the Courts are not, and have not been, required to go back and check to ensure the company was treated well when it refused to honor its agreement with its client.  TIG's defenses fail.  The underlying judgment constitutes part of the damage recoverable here.

### 3.   Interest on the Underlying Judgment

Pursuant to 28 U.S.C. § 1961(a) (2000), it is appropriate to apply interest to the underlying judgment.  The statute states, "[i]nterest shall be allowed on any money judgment in a civil

-18-

case recovered in a district court."  TIG has not offered a
compelling defense because TIG does believe it is liable for the
underlying judgment.

Montana and Ninth Circuit case law also support this element
of damage.  In *Lee*, the Montana Supreme Court applied interest as
well as costs to the underlying judgment.  *Lee*, ¶ 22.  The Ninth
Circuit also upheld the application of interest to a stipulated
judgment that surpassed policy limits in a failure to defend
action.  *Consolidate American Ins. Co. v. Mike Soper Marine
Services*, 951 F.2d 186, 191 (9th Cir. 1991).  Accordingly, TIG
shall pay interest on the underlying judgment since the date of
the judgment.

4.   The Award of Attorneys' Fees

Attorneys' fees are warranted pursuant to the Montana
Uniform Declaratory Judgment Act, Montana Code Annotated § 27-8-
313, the *Staples* decision, and *Trustees of Indian University v.
Buxbaum*, 2003 MT 97, 315 Mont. 210, 69 P.3d 663 (2003).  These
all suggest that this Court has the discretion to grant
attorneys' fees.  The statute provides that attorney's fees "may
be granted whenever necessary or proper."  The *Staples* decision,
citing *Lee* and *Independent*, noted that insurance companies that
fail to render defense are liable for defense costs.  *Staples*, ¶
20.  TIG offers only that fees are not merited because it would
be inequitable.  The Plaintiff shall submit an affidavit setting

-19-

forth in detail any attorney fee's claimed relating to this case. Such affidavit shall indicate any contingent fees paid or to be paid in the underlying case.

Based upon the foregoing I adopt Judge Erickson's Findings and Recommendation (dkt #101) in full.

IT IS HEREBY ORDERED THAT Plaintiffs' motion for partial summary judgment (dkt #55) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (dkt #82) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (dkt #86) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff shall file the attorney's fee affidavit no later than June 15, 2006. Defendant shall have until June 30, 2006 to respond to the amount of attorneys' fees claimed.

DATED this 31st day of May, 2006.

DONALD W. MOLLOY, Chief Judge
United States District Court

-20-